UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

**CIVIL ACTION NO. 08-88-JBC**

**JASON B. MCDAVID,**                                                         **PLAINTIFF,**

**V.**                 **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                       **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits and Supplemental Security Income (R. 10, 11). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the Commissioner's motion.

**I. Overview of the Process**

Judicial review of the Administrative Law Judge's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Commissioner properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520. If it is determined during the process that the claimant is not disabled, then the analysis ceases at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

## II. The ALJ's Determination

The claimant is a thirty-one-year-old male with a high-school education and

2

past work experience as a laborer for the Department of Highways, a cook and a night watch person. AR 23-24, 68. The claimant alleges disability beginning on August 25, 2004, due to degenerative disc disease, back and leg pain, stress and nerve problems, and depression. AR 71-72, 84, 118. The plaintiff filed applications for Disability Insurance Benefits ("DIB") on May 9, 2005, and for Supplemental Security Income ("SSI") on May 12, 2005, which were denied initially and on reconsideration. AR 15. After a hearing held on June 6, 2007, and a supplemental hearing held on September 7, 2007, Administrative Law Judge ("ALJ") Algernon W. Tinsley determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 15-25. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity. At Step 2, the ALJ found that the plaintiff's degenerative disc disease of the lumbar spine, dysthymia, anxiety disorder, and borderline intellectual functioning were severe impairments. AR 17. The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3. The ALJ found that the claimant had the residual functional capacity ("RFC") to perform medium work with several functional limitations. AR 19-20. At Step 4, the ALJ found that the claimant was able to perform his past relevant work as a night watch person. The ALJ additionally concluded at Step 5, after considering the claimant's age, education, work experience, and RFC, that he could perform a significant number of other jobs in the national economy. AR 24. On April 14,

2008, the Appeals Council denied the claimant's request for review of the ALJ's November 28, 2007, decision, *see* AR 4-7, and the claimant then commenced this action.

### III. Legal Analysis

The plaintiff challenges the ALJ's finding that the claimant's impairments did not meet a listing in the Listing of Impairments and argues that the ALJ misapplied the law. The plaintiff specifically argues that his mental impairments met or equaled listing section 12.05(C) – mental retardation – and that he was disabled as a matter of law.

If a claimant has an impairment which meets the duration requirement and is listed in the Listing of Impairments then the Commissioner must find him disabled without considering his age, education, or work experience. 20 C.F.R. § 404.1520(d). The claimant bears the burden of proving that he is disabled, and he must demonstrate that his impairment satisfies all of the criteria for the listed impairment, including any relevant criteria in the introduction. 20 C.F.R. § 404.1512(a), 1525(c)(3); *Foster v. Halter*, 279 F.3d 348, 353-54 (6th Cir. 2001). Section 12.05(C) of the Listed Impairments states:[1]

---

[1] "Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports o
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

To satisfy the requirements of listing 12.05(C), the claimant must show that he has a valid IQ score within the required range.  The claimant provided a psychological evaluation completed on April 28, 1993, when he was fifteen years and 8 months old.  AR 293-300.  The report includes the claimant's IQ scores as follows: verbal IQ of 70, performance IQ of 70, and a full scale IQ of 68.  AR 299.  The claimant argues that these scores meet the requirements of the listing and thus the ALJ erred in finding that the claimant "does not have sufficient IQ scores to demonstrate such a mental impairment as is required of the listings at Section 12.05."  AR 18.  According to the claimant, the IQ test results are uncontradicted in the record and they qualify as valid IQ scores and meet the requirements of Section 12.05(C).

The regulations state that a psychological report, such as the one in this case, should include a narrative report that accompanies the test results and comments on whether the IQ scores are considered valid and whether they are

5

consistent with the claimant's history and functional limitations.[2] In response to a question about the test's validity, the examiner observed in the report that the psychological test "may be a slight underestimate due to Jason's tendency to give up on difficult tasks." AR 297. Thus, the test results are of questionable validity, having been undermined by the claimant's own examiner.[3]

"The IQ score must reflect the plaintiff's true abilities as demonstrated by his or her performance at work, household management and social functioning." *Brown*

---

[2] "The results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(a).

[3] The ALJ additionally noted "that the evaluation was performed over 14 years ago and the test was a child's intelligence test." AR 22. The regulations regarding IQ scores of children under the age of eighteen are not directly applicable to the claimant because he is now an adult. However, they are informative to the extent that the tests cited by the claimant were conducted while he was still under the age of eighteen and it was the "Wechsler Intelligence Scale for Children" that was used to determine the claimant's IQ at that age. AR 293-300. According to the regulations, whether the test results are current can affect whether the results give an accurate assessment of the child's IQ. 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(D)(10). "IQ test results obtained between ages 7 and 16 should be considered current for . . . 2 years when the IQ is 40 or above." *Id.* Because the claimant was nearly 16 it should also be noted that "IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior." *Id.* As explained below, there is substantial evidence to support the ALJ's determination that the claimant's behavior is not compatible with the test scores from when he was under 16. The ALJ found that the claimant has the capacity to perform a significant number of jobs in the national economy, including his past work as a night watch person.

*v. Sec'y of Health and Human Servs.*, 948 F.2d 268, 269 (6th Cir. 1991) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 B-C). IQ results are not valid if they are inconsistent with the substantial evidence in the record. *Newsome v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 733, 738 (W.D. Mich. 2007). The claimant's developmental and work history and daily activities can provide substantial evidence for the ALJ's findings. *Id.* "The regulations do not limit the question of validity to test results alone in isolation from other factors." *Brown*, 948 F.2d at 269.

The evidence in the record, including the following, supports the ALJ's conclusion that the claimant is not disabled: he was graduated from high school; he completed a vocational course in welding during high school; he has past work experience as a laborer for the Department of Highways, which the vocational expert classified as semi-skilled work; he passed a written exam to receive his commercial driver license; and he can read, write, and perform basic mathematics. AR 310, 313, 328. A consultative psychologist opined that the claimant "appears to have good ability to understand, retain, and follow simple instructions; good ability to sustain attention to perform simple, repetitive tasks; and good ability to relate to others including fellow workers and supervisors." AR 156. The state agency physicians opined that the claimant retained the capacity to understand, remember and carry out simple tasks and non-detailed tasks; maintain concentration and attention for two hour segments over an eight-hour period;

complete a normal workweek without excessive interruptions from psychologically based symptoms; demonstrate adequate judgment and make adequate decisions; respond appropriately to supervisors and co-workers; maintain appropriate hygiene and dress suitable to the work place; adapt to routine changes and avoid hazards on a sustained basis. AR 174, 225. The ALJ found that "[g]iven the overall evidence of record, . . . the claimant has severe Borderline Intellectual Functioning" rather than mental retardation. AR 18. The ALJ's decision is supported by substantial evidence in the record and he did not err in his application of the law.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (R. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (R. 10) is **DENIED**.

Signed on February 13, 2009



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY